**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**RUTHERLAN ENTERPRISES, INC.,**

      **Plaintiff,**                      **Case No. 2:14-cv-0019**
                                        **JUDGE GREGORY L. FROST**
**v.**                                **Magistrate Judge Elizabeth P. Deavers**

**ZETTLER HARDWARE, et al.,**

      **Defendants.**

## OPINION AND ORDER

This matter is before the Court for consideration of Defendants Zettler Hardware, Nicholas Zettler, Peter Michailidis, Luke Stratton, and Alex Rouse's (collectively "Defendants")[1] motion for summary judgment (ECF No. 35), Plaintiff's memorandum contra (ECF No. 38)[2], and Defendants' reply memorandum (ECF No. 40).  For the reasons that follow, the Court **GRANTS in part** and **DENIES in part** Defendant's motion.

### I.      BACKGROUND

Plaintiff, Rutherlan Enterprises, Inc. d/b/a Island Ace Hardware ("Rutherlan"), is a Hawaiian corporation with its primary place of business in Princeville, Hawaii.  Rutherlan sells tools and other hardware in Hawaii and is a franchise of Ace Hardware Corporation.  Terry Caplan ("Caplan") is the President of Rutherlan.

Defendant Substruct Systems, LLC ("Substruct") is an Ohio limited liability company with its principal place of business located in Worthington, Ohio.  Substruct is funded by Zettler

---

[1] This case also involves additional defendants: Substruct Systems; Does 1-10; and ABC Corporations 1-10.  Those defendants are not among the defendants who filed the motion for summary judgment.  Though the group of defendants that chose to file the relevant motion does not include all the defendants in this case, for ease of reference the Court shall refer to the filing defendants collectively as "Defendants."
[2] ECF. No. 38 is Plaintiff's Amended Response to the Motion for Summary Judgment.

Hardware ("Zettler").  Substruct sold and designed computer systems and computer-related software, including point-of-sale systems ("POS systems").  Defendants Luke Stratton ("Stratton"), Alex Rouse ("Rouse"), and Nicholas Zettler ("Mr. Zettler") were each members of Substruct.  Peter Michailidis ("Michailidis") was an employee of Substruct.

Though the initiating party is disputed, Substruct and Rutherlan entered into an agreement in 2008 through which Rutherlan would use a POS system designed by Substruct. Caplan spoke primarily with Michailidis and Stratton regarding the details of the POS system that Substruct was designing for Rutherlan.  Michailidis and Stratton provided Caplan with the contact information for a few Ace Hardware stores that were using the Substruct POS system. Caplan contacted the Ace Hardware store in Boyne City, Missouri, and spoke to proprietor Jim White about the Substruct system.  White told Caplan that he was happy with the system overall, but had experienced some minor glitches with it.

On or about June 13, 2008, Stratton and Michailidis visited Rutherlan Enterprises, Inc., where they met with Brian Wong ("Wong") from the Ace Hardware Corporate offices and Caplan to further discuss the POS system.  Wong expressed concern to Caplan that the Substruct POS system would not be a good fit for Rutherlan.  Despite Wong's concerns, Caplan opted to move forward with the installation of the Substruct POS system.  On December 16, 2008, Rutherlan and Substruct entered into a contract for the POS system, which includes a clause stating that Ohio law shall govern the agreement.  The POS system was installed in early January 2009 and went live on January 12, 2009.  Though the parties agree that there were some initial issues with the POS system, a late January 2009 email communication between Stratton and Caplan indicated that Caplan thought Substruct was working to fix the problems with the POS system.

2

After the installation, Rutherlan continued to experience sporadic issues with the Substruct system.  By June 2009, Caplan had decided Rutherlan needed to switch back to its former system, Activant, and Caplan began plotting the details of the switch.  Prior to the termination of Rutherlan's contract with Substruct, no one at Substruct had been made aware of Caplan's plan for reverting back to Activant.  On September 30, 2009, Caplan terminated the Substruct contract, and Rutherlan reinitiated the Activant POS system.

Defendants allege that, following Rutherlan's switch back to Activant, Rutherlan destroyed, removed, and/or discarded the hard drive that held the Substruct POS, as well as the computer terminals, thereby leaving Rutherlan in possession of only a few pieces of the Substruct POS system.  Rutherlan denies any improper actions regarding the Substruct POS system, maintaining that the materials in question had been packaged up and stored with the intention of being shipped back to Substruct.

On October 12, 2010, Rutherlan filed a complaint in the Circuit Court of the Fifth Circuit of Hawaii, alleging eight claims for relief against Substruct: two claims for breach contract; misrepresentation; fraud in the inducement; promissory estoppel; breach of implied warranties; breach of express warranties; and unjust enrichment.  (ECF No. 35-2.)  That case was dismissed due to the Hawaiian state court's lack of jurisdiction.  On September 26, 2011, Rutherlan filed a complaint in this Court, citing five claims for relief: breach of contract; unjust enrichment; fraudulent misrepresentation; breach of implied warranty; and breach of express warranty.  (Case No. 2:11-cv-859, ECF No. 1.)  The parties filed a joint stipulation of voluntary dismissal on March 6, 2013.  (*Id.*)  On May 17, 2013, Substruct filed its certificate of dissolution.

On January 7, 2014, Rutherlan filed a complaint in this Court against Substruct, Zettler, Mr. Zettler, Stratton, Rouse, Michailidis, Does 1-10, and ABC Corporations 1-10.  (ECF No. 1.)

Again, Plaintiff's complaint asserts five claims for relief: breach of contract; unjust enrichment; fraudulent misrepresentation; breach of implied warranty; and breach of express warranty.  (*Id*.)

Defendants Zettler, Michailidis, Rouse, Stratton, and Mr. Zettler now move for summary judgment on count three (fraudulent misrepresentation) of the complaint and "a declaration that the breach of contract, unjust enrichment[,] and breach of warranty claims cannot be prosecuted against the [Defendants]."  (ECF No. 35 at 6).  That motion is fully briefed and ripe for the Court's review.

## II.    DISCUSSION

### A.  Standard of Review

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial.  *Id*. (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)).  Consequently, the central issue is "'whether the evidence

presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Hamad*, 328 F.3d at 234–35 (quoting *Anderson*, 477 U.S. at 251–52).

### B. Fraudulent Misrepresentation

To set forth a claim for relief for fraudulent misrepresentation, a plaintiff must establish (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance. *Milner v. Biggs*, 522 F. App'x 287, 294 (6th Cir. 2013) (citing *Funk v. Durant*, 799 N.E.2d 221, 224 (Ohio App. 5th Dist. 2003)).  Defendants proffer that Plaintiff's fraud claim must be dismissed based on the relevant statute of limitations, in addition to Plaintiff's failure to meet the requirements of Federal Rule of Civil Procedure 15.  The Court shall address each argument in turn.

### 1.  *Statute of Limitations and Ohio Savings Statute*

Defendants contend that Plaintiff's claim for fraudulent misrepresentation must be dismissed because it falls outside the statute of limitations set forth by Ohio Revised Code § 2305.09(C), which states that an action for relief on the ground of fraud shall be brought within four years after the cause has accrued.  Stated differently, the four-year statute of limitations "runs from the date the fraud was or should have been discovered." *Berry v. Javitch, Block & Rathbone, LLP*, 940 N.E.2d 1265, n.1 (Ohio 2010) (citing *Investors REIT One v. Jacobs*, 546 N.E.2d 206 (1989)).  Defendants claim that Rutherlan's fraud allegations center on Defendants'

representations made during the parties' various communications about the Substruct POS system. Those discussions took place in 2008. Defendants assert that the statute of limitations began to run when Rutherlan stopped using the Substruct POS system on September 30, 2009, at the latest. Pursuant to § 2305.09(C), the statute of limitations would have run on September 30, 2013.

The parties do not dispute that the four-year statute of limitations set forth by § 2305.09(C) applies here. Plaintiff takes issue, however, with Defendants' statute of limitations calculation in regard to its effect on the timeliness of Plaintiff's complaint. Specifically, Rutherlan states that, even assuming Defendants provided the correct statute of limitations dates, Plaintiff timely filed its complaint. Plaintiff proffers that the Ohio Savings Statute, Ohio Revised Code § 2305.19(A), preserved Plaintiff's January 7, 2014 complaint, rendering it timely filed.

The parties dispute the applicability of the Ohio Savings Statute, which states:

> In any action that is commenced or attempted to be commenced, if in due time a judgment for the plaintiff is reversed or if the plaintiff fails otherwise than upon the merits, the plaintiff… may commence a new action within one year after the date of the reversal of the judgment or the plaintiff's failure otherwise than upon the merits or within the period of the original applicable statute of limitations, whichever occurs later. This division applies to any claim asserted in any pleading by a defendant.

O.R.C. § 2305.19(A). Thus, Rutherlan's claims are protected by the Ohio Savings Statute if they: "1) failed otherwise than upon the merits, and 2) [Rutherlan]…re-filed those claims either within one year of the date of such failure or within the period of the original statute of limitations, whichever occurs last." *Cooper v. City of Westerville*, No. 2:13-cv-427, 2014 WL 617650, at *5 (S.D. Ohio Feb. 18, 2014) (citing Ohio Revised Code § 2305.19(A)). Here, it is undisputed that Plaintiff voluntarily dismissed its 2011 case, which meant that the case failed otherwise than on the merits. Whether Plaintiff's claim is preserved pursuant to the Ohio

Savings Statute, then, hinges on the details of the January 2014 complaint. The Court need not address those details, however, given the addition of new defendants in the complaint *sub judice*.

Neither party addresses the direct applicability of the Ohio Savings Statute to actions that include new parties. In *Children's Hospital v. Ohio Dept. of Public Welfare*, the Ohio Supreme Court found that the Ohio Savings Statute was "inapplicable in a case where the parties and relief sought in the new action are different from those in the original action." 69, Ohio St. 2d 523, 526, 433 N.E.2d 187, 189-90 (Ohio 1982). Some courts have found that the addition of entirely new parties renders the Ohio Savings Statute inapplicable. *See Griffin v. City of Columbus*, 10 F. App'x 271, 273 (6th Cir. 2001) (citing *Children's Hosp.*, 433 N.E.2d at 189-90) (finding the Ohio Savings Statute inapplicable to the plaintiff's claims against defendants who were not parties in the prior action); *Lum v. Mercedes Benz USA, L.L.C.*, No. 3:05-cv-7191, 2006 WL 1174228, at *2 (N.D. Ohio Apr. 28, 2006) ("the addition of new parties in *Children's Hospital* was a circumstance supporting the conclusion that the complaints were not substantially the same"); *see also Am. Premier Underwriters Inc. v. Gen. Elec. Co.*, 900 F. Supp. 2d 753, 759 (S.D. Ohio 2012) (finding the Ohio Savings Statute inapplicable because "[w]hile the parties may be the same, and both the previous action and this action involve a theory of indemnity, the underlying source of liability is different").

In *Eaves v. Strayhorn*, the Court determined that the plaintiff's claims against two new defendants were untimely filed. No. 1:09-cv-394, 2010 WL 2521449, at *9 (S.D. Ohio June 15, 2010). The *Eaves* Court then found that the plaintiff's claims could not be saved under the Ohio Savings Statute because the case at bar and the previously filed state case were not substantially the same due to the addition of entirely new parties. *Id.* The *Eaves* Court explained that "liberally construing the statute does not mean the Court can ignore the Ohio Supreme Court's

7

holding that the savings statute cannot be used to sweep in defendants who were not parties in the original complaint." *Id.* (citing *Children's Hosp.*, 433 N.E.2d at 188).

Here, Plaintiff asserts that the Ohio Savings Statute preserves its fraudulent misrepresentation claim against Defendants because the claim was set forth in the 2011 complaint.  This Court disagrees.  There are no issues of material fact regarding the addition of parties to the present case.  Defendants Zettler, Mr. Zettler, Rouse, Michailidis, and Stratton were neither parties to the Hawaii state court action nor the original federal court action.  Plaintiff, then, had not one, but two earlier opportunities to attempt to bring its claim for fraudulent misrepresentation against Defendants.  Rutherlan chose to wait, however, until the most recent filing to include these five additional defendants.  Due to Plaintiff's addition of new parties in the 2014 complaint, the Court finds that the fraudulent misrepresentation claim is not preserved by the Ohio Savings Statute.  As such, the Court **GRANTS** Defendant's motion for summary judgment as to the dismissal of Plaintiff's claim for fraudulent misrepresentation.[3]

### C.  Spoliation of Evidence

The Court next considers Defendants' argument that they are entitled to summary judgment the remaining claims due to Plaintiff's alleged spoliation of the POS system.  A litigant is eligible to be sanctioned for spoliation of evidence if three elements are met: (1) "the party with control over the evidence must have had an obligation to preserve it at the time it was destroyed," (2) "the accused party must have destroyed the evidence with a culpable state of mind," and (3) "the destroyed evidence must be relevant to the other side's claim or defense." *Byrd v. Alpha Alliance Ins. Corp.*, 518 F. App'x 380, 384 (6th Cir. 2013) (citing *Beaven v.*

---

[3] It is worth noting that Defendants do not assert an argument concerning the application of the Ohio Savings Statute to Plaintiff's four remaining claims.  Given the undisputed facts of this case, those claims could have been dismissed on the same ground.

*United States DOJ,* 622 F.3d 540, 553 (6th Cir.2010)).  Demonstrating that evidence was destroyed with a culpable state of mind can be "satisfied 'by a showing that the evidence was destroyed knowingly, even if without intent to breach a duty to preserve it, or negligently.'" *Adkins v. Wolever*, 692 F.3d 499, 504-05 (6th Cir. 2012) ("*Adkins II*") (quoting *Beaven*, 622 F.3d at 554).  A district court may "impose many different kinds of sanctions for spoliated evidence, including…summary judgment."  *Adkins v. Wolever,* 554 F.3d 650, 653 (6th Cir. 2009) ("*Adkins I*") (internal citation omitted).

Because Plaintiff removed the POS system's hard drive, installed a new hard drive, and then replaced several of the terminals, Defendants assert that an expert cannot prove that the POS system actually failed.  Defendants insist that Plaintiff had an obligation to preserve the POS system, particularly once Plaintiff decided that the POS system had failed and replaced the Substruct system with Activant's system, thus opening the door to possible future litigation.  Next, Defendants claim that Plaintiff's conscious removal of the hard drive, taken with Plaintiff's purported knowledge that such removal would make proof of the system's failure impossible to discern, constitutes  negligence, even if done unintentionally.  Finally, Defendants contend that the POS system is the key piece of evidence in this matter.  Based on those assertions, Defendants allege that they have met the three elements required to show that Plaintiff's remaining claims must be dismissed on the ground of spoliation.

Plaintiff counters that there are three facts that directly dispute Defendants' argument: (1) Caplan never stated that he destroyed the evidence; (2) Caplan testified that no data was lost when Rutherlan switched from Substruct to Activant; and (3) Rutherlan had at least two redundant arrays of inexpensive disks ("RAID") for backup, which would have preserved any potentially lost data.  Plaintiff contends that there is little to no evidence to support the claim that

the POS system was destroyed, noting that Defendants rely solely on Caplan's deposition. According to Plaintiff, the POS system was disassembled and prepared to be shipped back to Substruct. Plaintiff asserts that, even if Defendants accurately stated that the POS system could not be tested, the inability to test the system does not, by itself, constitute spoliation. Moreover, Plaintiff claims that Defendants have not once asked to inspect the POS system. As such, Plaintiff insists that Defendants' spoliation argument is premature.

There are no issues of material fact in regard to the first or third elements of spoliation. Assuming *arguendo* that the evidence was destroyed, it was in Plaintiff's possession and was the basis for this litigation, which fulfills the first element of spoliation. Similarly, because the POS system and its performance is the basis for this case, there is no question that the system is relevant to *both* parties' claims and defenses, thereby satisfying the third spoliation prong. Having established that neither of those elements is at issue here, the Court need only focus on the second element of a spoliation claim: whether the evidence was destroyed with a culpable state of mind.

Despite Defendants' insistence that Plaintiff destroyed the POS system with a culpable state of mind, the Court finds that there are issues of material fact that bar a decision in Defendants' favor. First, there are disputed facts as to whether the POS system was destroyed. Although the parties seem to agree that the POS system is no longer intact, whether it can be assessed by an expert who can determine whether the system performed its intended functions remains to be seen. Moreover, Plaintiff's assertion that the POS system has been sitting in a box ready to be shipped for the past five years does not mean that those pieces have been destroyed as opposed to broken down into component parts. Even if there were undisputed facts that Plaintiff had destroyed the POS system, Defendants have failed to present evidence to show that

10

a reasonable jury could conclude that such destruction was done with a culpable mind. The issues of material fact that persist prevent this Court from determining that Plaintiff's remaining claims must be dismissed on the spoliation ground. As such, the Court **DENIES** Defendants' motion for summary judgment on the spoliation claim.

### D. Breach of Contract

In their final argument, Defendants assert that they cannot be held liable for Plaintiff's breach of contract claim. To succeed on a breach of contract claim under Ohio law, a plaintiff must establish the "existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." *Doner v. Snapp*, 98 N.E.2d 42, 44 (Ohio App. 2d Dist. 1994). Defendants rely on Ohio Revised Code § 1705.48(A), which states that "[t]he debts, obligations, and liabilities of a limited liability company, whether arising in contract, tort, or otherwise, are solely the debts, obligations, and liabilities of the limited liability company." The statute continues:

> [n]either the members of the limited liability company nor any managers of the limited liability company are personally liable to satisfy any judgment, decree, or order of a court for, or are personally liable to satisfy in any other manner, a debt, obligation, or liability of the company solely by reason of being a member or manager of the limited liability company.

Ohio Revised Code § 1705.48(B). Finally, § 1705.48(C) provides that "[n]othing in this chapter affects any personal liability of a member of a limited liability company or any manager of a limited liability company for the member's or manager's own actions or omissions." Defendants also argue that Zettler cannot be held liable on Plaintiff's breach of contract claim because there was not privity of contract between Rutherlan and Zettler. *See Eves v. AIG, Inc.*, No. 2:09-cv-543, 2010 WL 749925, at *2 (S.D. Ohio Feb. 22, 2010) ("[t]o maintain a cause of action for breach of contract, Ohio law requires privity of contract") (internal citation omitted).

11

Plaintiff disputes Defendants arguments on a few grounds.  First, Plaintiff contends that Defendants are liable for breach of contract under Ohio's alter-ego doctrine.  Pursuant to Ohio law, there are several factors Courts should consider when determining whether a company is an alter ego of an individual, including:

> (1) grossly inadequate capitalization, (2) failure to observe corporate formalities, (3) insolvency of the debtor corporation at the time the debt is incurred, (4) shareholders holding themselves out as personally liable for certain corporate obligations, (5) diversion of funds or other property of the company property for personal use, (6) absence of corporate records, and (7) the fact that the corporation was a mere facade for the operations of the dominant shareholder(s).

*Taylor Steel, Inc. v. Keeton*, 417 F.3d 598, 605 (6th Cir. 2005) (citing *LeRoux's Billyle Supper Club v. Ma*, 602 N.E. 2d 685, 689 (Ohio App. 6th Dist. 1991)).  That list of factors is neither exclusive nor exhaustive.  *Id*. (internal citation omitted).  According to Plaintiff, Substruct would not have existed without Mr. Zettler, and it would not have been a viable money-making enterprise "without the Zettler Hardware name behind it."  (ECF No. 38 at 36).  Plaintiff insists that Defendants' power and their control over Substruct renders them liable under the alter ego doctrine, which, in turn, lends itself to piercing the corporate veil.

The Sixth Circuit has held that "when a corporation exists solely for the purpose of serving as an alter ego for its owners, 'the courts will not permit themselves to be blinded or deceived by mere forms or law.' "  *Flynn v. Greg Anthony Constr. Co.*, 95 F. App'x 726, 733-34 (6th Cir. 2003) (quoting *Chicago, M. & St. P. Ry. Co. v. Minneapolis Civic & Commerce Ass'n*, 247 U.S. 490, 501 (1918)).  Rather, the courts "'will deal with the substance of the transaction involved as if the corporate agency did not exist and as the justice of the case may require.'"  *Id*.

Pursuant to Ohio law, there is a three-prong test for the Court to determine whether veil piercing is proper in a particular case. The Court may disregard the corporate form and hold individual shareholders liable for corporate misdeeds if:

> (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.

*Dombroski v. WellPoint, Inc.*, 119 Ohio St. 3d 506, 511, 895 N.E.2d 538, 543 (Ohio 2008) (quoting *Belvedere Condo. Unit Owners' Ass'n. v. R.E. Roark Cos., Inc.*, 67 Ohio St. 3d 274, 288-89, 617 N.E.2d 1075, 1086 (Ohio 1993)).

The three-prong test has "also been applied to ascertain whether a parent corporation could be held liable for its subsidiary corporation's misconduct." *Minno v. Pro-Fab, Inc.*, 121 Ohio St. 3d 464, 467, 905 N.E.2d 613, 617 (Ohio 2009) (internal citation omitted). Moreover, "[a] court may pierce the veil separating corporations and their shareholders but will do so only rarely on a case-by-case basis." *Ruffing v. Masterbuilt Tool & Die, LLC*, No. 1:08-cv-1264, 2009 WL 185950, at *13 (N.D. Ohio Jan. 23, 2009) (internal quotation omitted). The party seeking to impose liability on the parent corporation by piercing the corporate veil bears the burden of proof to demonstrate that the corporation is culpable. *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 724 (6th Cir. 2007) (citing *LeRoux's Billyle*, 602 N.E.2d at 689).

Here, there are issues of material fact that preclude this Court from finding in favor of Defendants. There is no question that the parties entered into a contract, and that there was performance by Plaintiff. Neither party has adequately factually established or denied whether Plaintiff suffered a damages or loss due to Defendants' alleged breach. The lack of evidence

does not equate to a finding in Plaintiff's favor; rather, based on the insufficient concrete factual evidence available in the pleadings, this Court finds that Defendants' should not be granted summary judgment on Plaintiff's breach of contract claim.

Though this Court is not granting summary judgment in Defendants' favor on the breach of contract claim, it does not mean that Plaintiff's theories regarding alter ego and piercing the corporate veil are well taken.  The facts presented, when viewed in the light most favorable to Plaintiff, do not show that Substruct was Defendants' alter ego.  This Court agrees with Defendants' argument that Plaintiff has failed to support its alter ego allegations with sufficient factual support.  That does not mean, however, that the Court finds in Defendants' favor on the breach of contract claim.  There are various elements that the Court should consider prior to determining that a corporation is acting as an individual's alter ego, and, while there may be one or two factors that plausibly apply in this instance, there is an overwhelming lack of support for Plaintiff's theory.

Furthermore, Plaintiff bears the burden of showing that Defendants' actions warrant this Court piercing the corporate veil.  Defendants insist that Plaintiff's accusations regarding Defendants' alleged impropriety do not fulfill the *Belvedere* requirements; this Court agrees. Plaintiff has failed to provide a sufficient factual basis necessary for this Court to determine that piercing the veil would be proper.  That lack of evidence, however, cuts both ways.  The insufficient factual grounds render this Court unable to determine that a reasonable jury could find for Defendants on the breach of contract claim.  Given the lack of evidence to support properly a finding in Defendants' favor, the Court must **DENY** summary judgment on the breach of contract claim.

14

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** Defendants Zettler Hardware, Nicholas Zettler, Peter Michailidis, Luke Stratton, and Alex Rouse's motion for summary judgment. (ECF No. 35.) Thus, Defendants' are awarded summary judgment on claim three, fraudulent misrepresentation. Claims one, two, four, and five of Plaintiff's complaint remain pending.

**IT IS SO ORDERED**.

 /s/ Gregory L. Frost_____
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**