IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **RUTHERLAN ENTERPRISES, INC.,** | : | |
| | : | Case No. 2:14-CV-0019 |
| Plaintiff, | : | |
| | : | JUDGE ALGENON L. MARBLEY |
| v. | : | |
| | : | Magistrate Judge Deavers |
| **ZETTLER HARDWARE,** *et al.*, | : | |
| | : | |
| Defendants. | : | |

## ORDER

Before the Court is a motion for summary judgment filed by Defendants Zettler Hardware and Messrs. Peter Michailidis, Alexander Rouse, Luke Stratton, and Nicholas Zettler (Doc. 75). For the reasons that follow, the Court **GRANTS** the Motion.

### I. BACKGROUND

### A. Factual Background

Plaintiff Rutherlan Enterprises, Inc. d/b/a Island Ace Hardware ("Rutherlan") initiated this diversity contract action by filing a complaint with the Court on January 7, 2014. (Doc. 1.) At some point before fall 2008, Michailidis, Rouse, and Stratton, then employed by Zettler Hardware, developed a point-of-sale computer system for use in their and other retail hardware stores, and they created Substruct Systems, LLC ("Substruct") in 2005 to further that goal. (Doc. 1, ¶¶ 19-21.) Zettler gave the other Defendants seed money to develop the software. (Zettler Depo., Doc. 37, 12:17-24, 13: 1-4.) In the fall of 2008, Defendants solicited Rutherlan to buy their point-of-sale system, telling him that that theirs would substantially outperform the system Rutherlan was then using. (*Id.*, ¶ 24.) In December of 2008, Rutherlan agreed to purchase and install Defendants' system, having received assurances from Defendants that they would install

1

the system and correct any defects that arose in its operation. (*Id.*, ¶ 27.) Rutherlan employees noticed several defects in the system soon after its installation. (*Id.*, ¶ 29.) The defects were severe enough to render many of the system's functions and components, some essential to Rutherlan's business, entirely non-operational. (*Id.*, ¶¶ 30-32.) Rutherlan suffered substantial losses in revenue and good will responding to the meltdown, and incurred an "extraordinary" expense reinstalling its previous point-of-sale system. (*Id.*, ¶¶ 33, 35.) Terry Caplan, then Rutherlan's president, terminated its contract with Defendants on September 30, 2009. (*Id.*, ¶ 37; Caplan Depo., Doc. 34, p 83:4-17.)

### B. Procedural History

In October of 2010, Rutherlan filed its first complaint solely against Substruct in Hawaii state court. (*See* 12/10/2010 Compl., Doc. 35-2.) The Hawaii court soon thereafter dismissed the complaint for improper venue. On September 26, 2011, Plaintiff filed suit in this Court, also solely against Substruct. *See Rutherlan Enters. v. Substruct Sys., LLC*, Case No. 2:11-cv-00859 (S.D. Ohio, Sep. 26, 2011). Parties voluntarily dismissed the action on March 6, 2013. (*Id.*, Doc. 29.)

Plaintiff filed its initial complaint in the case *sub judice* against Substruct and, for the first time, the other co-Defendants, on January 7, 2014, alleging breach of contract, unjust enrichment, fraudulent misrepresentation, and breach of express and implied warranties. (Doc. 1, ¶¶ 39-76.) On September 2, 2014, Defendants filed a motion for partial summary judgment as to the third count, fraudulent misrepresentation, and declaratory relief finding that they could not be held personally liable for any other harm alleged. (Doc. 35.) The Court granted that motion in part in a November 14, 2014 Order, which dismissed the third count but left pending the remaining counts. (Doc. 42 at 15.) On July 1, 2015, the Court ordered Substruct into default.

(Doc. 60.) The remaining Defendants filed the motion now at issue on November 10, 2015, requesting money damages and attorney's fees. (Doc. 75 at 11.) It is fully briefed and ripe for review.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is deemed material only if it "might affect the outcome of the lawsuit under the governing substantive law." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

The necessary inquiry for the Court is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251-52). Although the evidence must be viewed in the light most favorable to the nonmoving party, *United States S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013), the nonmoving party must present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).

## III. ANALYSIS

Before reaching the merits, the Court must address a procedural concern. Defendants contend that Plaintiff is time-barred by the statute of limitations set by § 1302.98 of the Ohio Revised Code.[1] (Doc. 75 at 1.) Plaintiff counters that Defendants have waived the defense and

---

[1] Chapter 1302: Sales, the Revised Code's codification of the Uniform Commercial Code.

3

that, even without waiver, § 1302.98 is inapplicable because the point-of-sale system is not a "good" as defined by chapter 1302 of the Revised Code.

Federal Rule of Civil Procedure 8 sets forth general pleading rules, and it provides that a party "must affirmatively state any avoidance or affirmative defense, including: . . . statute of limitations." Fed. R. Civ. Proc. 8(c)(1). Federal Rule of Civil Procedure 12(b) provides that "[e]very defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required," which means that "[f]ail[ing] to plead an affirmative defense in the first responsive pleading to a complaint generally results in a waiver of that defense." *Horton v. Potter*, 369 F.3d 906, 911 (6th Cir. 2004) (citing *Haskell v. Washington Twp.*, 864 F.2d 1266, 1273 (6th Cir. 1988)).

Defendants' pleadings contained no statute-of-limitations defense for any claim now at issue,[2] which is a plain violation of Rules 8 and 12. An affirmative defense should not be surprising for the obvious reason that the surprise can unjustly prejudice an opposing party. *See Smith v. Sushka*, 117 F.3d 965, 969 (6th Cir. 1997) (stating that "[t]he purpose of [pleading rules] is to give the opposing party notice of the affirmative defense and a chance to respond, but nonetheless finding that the defense was not waived where failure to plead "did not result in surprise or unfair prejudice."). Defendants afforded Plaintiff no notice of or opportunity to respond to it during discovery. More troubling is the fact that the defense relies on an obscure portion of the Code, making it even more difficult for Plaintiff to oppose fairly. The Court finds that Defendants have waived the statute-of-limitations defense and, having so found, the Court

---

[2] Though they did plead a statute-of-limitations defense, it concerned only Plaintiff's claim for fraudulent misrepresentation, (*see, e.g.*, Michailidis Answer, Doc. 25, ¶ 84), which was dismissed in the Court's November 14, 2014 Order on Defendants' first Motion for Summary Judgment. (Doc. 42 at 15.)

4

declines to examine whether § 1302.98 of the Revised Code applies, and will now discuss the merits.

### A. Breach of Warranties

Under Ohio law, the only time liability for breach of express or implied warranty may be imputed to a person is when that person has bound herself, which "depends upon the intent of the parties" at the time they entered into the agreement. *Centennial Ins. Co.*, 346 N.E.2d 137, 142 (Ohio App. 6th Dist. 1975). Defendants argue that none of them intended to be held liable personally for breach of express or implied warranty of the contract and, thus, cannot be held liable now. As for implied warranty, Ohio law mandates that only sellers who are "merchant[s] with respect to the goods" in question may be held liable for breach of implied warranty. Ohio Rev. Code § 1302.27(A). Defendants submit that they are not merchants and, thus, cannot be held liable for this count.

Plaintiff has failed to cite any evidence in the record to counter any of Defendants' averments or arguments concerning liability for breach of express or implied warranty. As such, the Court accepts Defendants' assertions as true, and **GRANTS** Defendants' Motion for Summary Judgment as to those claims. *See Liberty Steel Prods., Inc. v. Acore Door Co., Inc.*, No. 4:05-CV-1124, 2006 WL 1473509, at *3-4 (N.D. Ohio, May 23, 2006).

### B. Breach of Contract

Plaintiff's claim for breach of contract fails if there is no question of material fact that Defendants are not liable for Substruct's alleged conduct. Plaintiff has not alleged joint or several liability, so its claim rests solely on a theory "piercing the corporate veil," that is imputing liability to an entity otherwise shielded from liability for corporate misconduct. As the Court noted in its prior Order, Ohio Revised Code § 1705.48(A) provides that "[t]he debts,

obligations, and liabilities of a limited liability company, whether arising in contract, tort, or otherwise, are solely the debts, obligations, and liabilities of the limited liability company." The statute continues:

> Neither the members of the limited liability company nor any managers of the limited liability company are personally liable to satisfy any judgment, decree, or order of a court for, or are personally liable to satisfy in any other manner, a debt, obligation, or liability of the company solely by reason of being a member or manager of the limited liability company.

Ohio Rev. Code § 1705.48(B).

Ohio law also sets forth a three-part test to determine whether a court may disregard corporate form and hold constituents liable for corporate misdeeds, which a court may do only if:

> (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.

*Dombroski v. WellPoint, Inc.*, 119 Ohio St. 3d 506, 511, 895 N.E.2d 538, 543 (Ohio 2008) (quoting *Belvedere Condo. Unit Owners' Ass'n. v. R.E. Roark Cos., Inc.*, 67 Ohio St. 3d 274, 288-89, 617 N.E.2d 1075, 1086 (Ohio 1993)).

The three-prong test has "also been applied to ascertain whether a parent corporation could be held liable for its subsidiary corporation's misconduct." *Minno v. Pro-Fab, Inc.*, 121 Ohio St. 3d 464, 467, 905 N.E.2d 613, 617 (Ohio 2009) (internal citation omitted). And "[a] court may pierce the veil separating corporations and their shareholders but will do so only rarely on a case-by-case basis." *Ruffing v. Masterbuilt Tool & Die, LLC*, No. 1:08-cv-1264, 2009 WL 185950, at *13 (N.D. Ohio Jan. 23, 2009) (citation and internal quotation marks omitted). The party seeking to impose liability on the parent corporation by piercing the corporate veil bears the burden of proof to demonstrate that the corporation is culpable. *Corrigan v. U.S. Steel*

6

*Corp.*, 478 F.3d 718, 724 (6th Cir. 2007) (citing *LeRoux's Billyle Supper Club v. Ma*, 602 N.E.2d 685, 689) (Ohio App. 6th Dist. 1991)).

The first consideration of the three-pronged *Belvedere* test considers the extent, if any, of the difference between the will of the corporation and that of the individual, because "[c]ourts will permit individual . . . liability only if the [individual] is indistinguishable from or the 'alter ego' of the corporation itself." *Belvedere*, 617 N.E.2d at 1085 (citation omitted); *see Dombroski*, 119 Ohio St. 3d at 511. Ohio law sets forth several factors a court should consider to determine whether an individual is an alter ego of a corporation, including:

> (1) grossly inadequate capitalization, (2) failure to observe corporate formalities, (3) insolvency of the debtor corporation at the time the debt is incurred, (4) shareholders holding themselves out as personally liable for certain corporate obligations, (5) diversion of funds or other property of the company property for personal use, (6) absence of corporate records, and (7) the fact that the corporation was a mere façade for the operations of the dominant shareholder(s).

*Taylor Steel, Inc. v. Keeton*, 417 F.3d 598, 605 (6th Cir. 2005) (citing *LeRoux's Billyle Supper Club*, 602 N.E.2d at 689). This list is neither exclusive nor exhaustive. *Id.* (internal citations omitted).

The Court found in its prior order that Plaintiff had failed to supply enough evidence to submit to a factfinder that any of the natural persons or Zettler Hardware are liable for Substruct's conduct. (Doc. 42 at 14) ("Plaintiff's theories regarding alter ego and piercing the corporate veil are [not] well taken."). In its September 27, 2014 Memorandum contra Defendants' first Motion for Summary Judgment, Plaintiff admitted that the factual record needed development. (Doc. 38 at 41) ("Given that the parties here have just barely begun discovery, the facts in this case aren't nearly as developed as those in the *Snapp* case.[3]

---

[3] *Snapp v. Castelbrook Builders, Inc.*, 7 N.E.3d 574, 597 (Ohio App. 3d Dist. 2014), which found liability under an alter-ego theory for an owner who commingled corporate funds with personal

Eventually, Rutherlan believes it will be able to prove a set of facts similar to those in *Snapp*, but at this point the case needs to continue through discovery, so the facts can be unveiled.").

Surprisingly, Plaintiff seems to have abandoned its veil-piercing and alter-ego theories, stating that it intends to pursue them in post-judgment proceedings. (Doc. 77 at 12.) Defendants submit that Plaintiff's theories are properly before the Court and ripe for analysis. The Court agrees with Defendants' position. Plaintiff introduced the theories more than a year ago, contending in its May 26, 2015 motion for default that Substruct's "corporate entity should be disregarded and the Defendants who participated in the fraud should be held individually liable for their conduct." (Mot. for Def. J., Doc. 53 at 8.) Plaintiff has since had ample time to develop the record in pursuit of its veil-piercing and alter-ego theories, yet has inexplicably chosen not to do so and, momentous for purposes of this Order, has also inexplicably chosen not to refute Defendants' argument that Plaintiff's theories are unsupported by record evidence. In all of the time since the Court's prior order, Plaintiff did not, for example, request any of Substruct's corporate documents until October 2, 2015, the discovery deadline. (Barwell Aff., Doc. 75-6, ¶ 15.) And Plaintiff's opposition to the motion at issue refers to no new facts unveiled in discovery concerning Plaintiff's alter-ego theory. Plaintiff instead includes the assessment of the software program by an expert witness who was not disclosed until September of 2015, (Doc. 78 at 7-8), nearly eight months after the Court-ordered deadline for submission of expert reports to opposing counsel.[4] (*See* 06/13/2014 Prelim. Pretrial Order, Doc. 32.)[5] None of Plaintiff's

---

finances, falsified charges, and exercised complete control over the conduct that caused damage to the plaintiff.

[4] Although it does not appear on the docket, in their reply to Plaintiff's opposition to this motion for summary judgment, Defendants moved to strike this expert report. Because the Court does not rely on the report to decide this motion, parties should consider Defendants' Motion to Strike the Expert Report and Testimony **DENIED** as **MOOT**.

opposition has any bearing on whether Plaintiff may rightly disregard Substruct's corporate form to hold Defendants liable for Substruct's alleged misconduct.

Because Plaintiff has not developed the factual record, the Court cannot analyze the seven *Keeton* factors listed above. Plaintiff's theories regarding alter ego and piercing the corporate veil were not well taken in the Court's prior Order, and they remain not well taken in this one. Plaintiff's failure to develop the factual record, despite its stated intention to do so and the ample time with which it could have, convinces the Court that nothing material concerning Plaintiff's theories will materialize, and compels the Court to find that the first part of Plaintiff's alter-ego theory is not satisfied, which means Plaintiff's veil-piercing theory fails as a matter of law. *See, e.g.*, *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 726 (6th Cir. 2007) (finding "no further analysis necessary" after the plaintiffs "failed to satisfy the first prong of Ohio's piercing test"). The Court thus **GRANTS** Defendants' motion for summary judgment as to Plaintiff's claim for breach of contract.

### C. Unjust Enrichment

Plaintiff's remaining claim is for unjust enrichment. Defendants argue that the Court must dismiss Count Two of the Complaint as a matter of law because Ohio law forbids recovery under an unjust enrichment claim when the claim is governed by the terms of an express contract unless there is evidence of fraud, bad faith, or illegality on the part of a defendant. *See Kucan v. Gen. Am. Life Ins. Co.*, No. 01AP-1099, 2002 WL 1933377, ¶ 39 (Ohio App. 10th Dist., Aug. 13, 2002) ("[A] plaintiff cannot prevail on an unjust enrichment claim in the absence of fraud or bad faith because recovery under an unjust enrichment claim is unavailable where the matters in dispute are governed by the terms of an express contract.").

---

[5] Defendants have asked the Court to sanction Plaintiff's counsel for this and other alleged misconduct. The Court declines to address the matter now. Defendants are free to move for sanctions later, which would give Plaintiff's counsel an opportunity to explain his behavior.


Parties do not dispute that the claim is governed by the terms of an express contract, so the only concern is whether there is evidence of fraud, bad faith or illegality. Defendants argue that the Court's prior dismissal of Plaintiff's fraudulent misrepresentation claim bars Plaintiff from pursuing its unjust enrichment claim now. (*See* Doc. 42 at 8.) This argument is unavailing. The Court's dismissal of Plaintiff's fraudulent misrepresentation claim was entirely procedural. (*Id.* at 7-8.) Defendants have supplied no argument, and the Court has found no law, to suggest that the alleged fraud, illegality, or bad faith underlying an unjust enrichment claim must also be actionable itself. Plaintiff nonetheless may not survive summary judgment as to this claim.

Plaintiff admits that Michailidis and Stratton (and, presumably, Rouse) were "too young and naïve to fully comprehend the consequences of their actions," which means that they were not engaged in fraudulent activity or acting in bad faith. Fraud and bad faith necessitate a culpable state of mind. *Drozeck v. Lawyers Title Ins. Corp.*, 749 N.E.2d 775, 782 (Ohio App. 8th Dist. 2000); *Pumphrey v. Quillen*, 141 N.E.2d 675, 681-82 (Ohio App. 9th Dist. 1955). As for Zettler, although Plaintiff argues his conduct is fraudulent, deposition testimony reveals that he was unaware at worst. *See* Zettler Depo., Doc. 37, 13:16-19 ("I guess some of the kids were very sharp and they were into computers and they said they could do it"); *id.*, 16:22-23 ("I guess they're young and they knew computers better than I did"). Plaintiff does not dispute that Zettler believed co-Defendants were knowledgeable with computers, however inexperienced. And that a septuagenarian would rely on the technological skills of those younger than him is no surprise. Although Plaintiff asserts that Defendants were engaged in a fraudulent scheme, the record indicates otherwise. The Court is not bound to, and here does not, accept Plaintiff's bare legal assertions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This is especially so when the record belies those assertions. Because the record provides insufficient evidence to submit to a

factfinder that Defendants were acting in bad faith or engaged in fraudulent or illegal activity, Plaintiff's claim for unjust enrichment fails, and the Court **GRANTS** Defendants' motion for summary judgment as to that claim.

## IV. CONCLUSION

The Court **GRANTS** Defendants' Motion for Summary Judgment, and the Court **DIRECTS** the Clerk of Court to enter judgment against Plaintiff. This case is **DISMISSED with prejudice**.

**IT IS SO ORDERED.**

                                                _s/Algenon L. Marbley_
                                                **ALGENON L. MARBLEY**
                                                **UNITED STATES DISTRICT COURT**

**Dated: August 26, 2016**