UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **Rutherlan Enterprises, Inc.** | Case No. 2:14-cv-00019 |
| Plaintiff | Judge Marbley |
| v. | Magistrate Judge Elizabeth Deavers |
| **Zettler Hardware, et. al.,** | |
| Defendants. | |

**DEFENDANT PETER MICHAILIDIS, LUKE STRATTON, ALEX ROUSE, NICHOLAS ZETTLER AND ZETTLER HARDWARE'S MOTION FOR AWARD OF REIMBURSING ATTORNEYS' FEES AND REQUEST FOR TAXATION OF COSTS**

In its August 26, 2016 Order, the Court permitted the Defendants to file a Memorandum addressing the availability of attorneys' fees in the within matter and provide an opportunity to Plaintiff's counsel to explain his behavior.  In accordance with this Court's Order, the Defendants submit the following Memorandum in Support for Award of Reimbursing Attorney's Fees.

                                                                                     Respectfully submitted,

                                                                                    Wesp Barwell LLC

                                                                                    */s/ Gregory P. Barwell*
                                                                                    Gregory P. Barwell (0070545)
                                                                                    Quinn M. Schmiege (0085638)
                                                                                    100 East Broad St, Suite 2350
                                                                                    Columbus, Ohio 43215
                                                                                   Voice and Fax:  614.456.0488
                                                                                   Attorneys for Defendants

**MEMORANDUM IN SUPPORT**

I. INTRODUCTION

Plaintiff has brought this action three times in two different courts. Plaintiff originally filed this action on October 12, 2010, in its home state of Hawaii.[1] Defendant challenged the filing based upon the venue clause contained in the parties' contract, and the court readily dismissed it. On or about September 26, 2011, Plaintiff filed its case in this Court[2] and ultimately dismissed the case because Plaintiff had not completed discovery and this Court would not extend the discovery dates to allow Plaintiff to complete its discovery outside of the pre-ordained discovery schedule.[3] This current matter was then filed by Plaintiff on January 7, 2014.

II. STATEMENT OF FACTS

This is essentially a breach of contract lawsuit whereby the Plaintiff claimed fraud in order to attempt to pierce the corporate veil and reach the members of Substruct Systems, LLC, a limited liability company. However, before diving in and discussing Plaintiff's inaction from this case, it is important to review Document No. 9 and No. 23 from case No. 2:11-CV-859. Document No. 9 is a Show Cause Order as to why the case should not be dismissed for want of prosecution. The Court in its Order states "The Court finds Plaintiff's counsel's conduct with respect this Court's Order wholly unacceptable." Document No. 23 illustrates the failure of Plaintiff to complete discovery within the Court's scheduling order with ample notice from Defendant's counsel to move his case along.[4]

---

[1] Civil No. 10-1-0224 Titled Rutherlan Enterprises Incorporated v. Substruct Systems, LLC, in the Circuit Court of the Fifth Circuit, State of Hawaii.
[2] Case No. 2:11-CV-859.
[3] See Document No. 29, Case No. 2:11-CV-859.
[4] This Court found in the 2011 case that "Plaintiff has failed to establish good cause to extend discovery cutoff date … Plaintiff has been anything but diligent in its pursuit of meeting the Court's scheduling deadlines." See Doc. No. 27 page 5, Case No. 2:11-CV-859.

In the present case, history repeated itself when, once again, Plaintiff failed to complete its discovery in the time set by this Court.  On July 1, 2015, this Court held a hearing on Plaintiff's Motion for Default Judgment and Piercing the Corporate Veil.  During the hearing Plaintiff's counsel stated that he was not prepared to move forward on its Motion for Piercing the Corporate Veil as he had not completed discovery.  On August 8, 2016, Plaintiff filed an Unopposed Motion to extend Discovery Cut-off date to October 2, 2015.  Plaintiff did conduct two depositions before October 2, 2015.  However, on the final day for discovery, Plaintiff served Defendants with a Supplemental Discovery Request for Documents that would have pushed the response date beyond this Court's Order.[5]  As clearly demonstrated, counsel for the Plaintiff either did not care about this Court's orders or did not bother to read them.  Plaintiff's counsel also demonstrated this same lack of diligence in his persistent pursuit of Defendants Luke Stratton, Peter Michailidis, Nicholas Zettler, Zettler Hardware and Alex Rouse for claims that were not supported by law and/or were filed beyond the statute of limitations.  Plaintiff's Counsel was informed several times to dismiss the claims against the Defendants because the claims were neither supported by case law or facts.  Instead Plaintiff pushed on with little effort in attempting to prove its theory to pierce the corporate veil.  In fact, Plaintiff could have dismissed all the claims against the individual defendants and still pushed its piercing the corporate veil theme.  Plaintiff's choice to force the claims cost the defendants almost $70,000.00 in attorney's fees to attend hearings and research, draft and file its motions for summary judgment.  Detailed below are some of the emails and correspondence to Plaintiff's counsel regarding dismissal of claims:[6]

> 1. February 20, 2014 letter to Joseph Bahgat demanding dismissal of all the claims but particularly the fraud claim.  Mr. Bahgat was put on notice that this claim would

---

[5] See October 2, 2015 email from Joseph Bahgat to Gregory Barwell attached hereto as Exhibit 1.
[6]  These are only some of the correspondence as there were phone calls and face-to-face meetings between counsel where Mr. Barwell plead with Mr. Bahgat to dismiss the claims.

3

   fail because it did not meet the heightened pleading standard for fraud and it was not timely.[7]

2. December 19, 2014 email to Joseph Bahgat once again asking about dismissal.[8]

3. February 5, 2015 email where Mr. Barwell informs Mr. Bahgat that Substruct is not in possession of any of its bank records and he will have to subpoena them.[9] As we all know, Mr. Bahgat did not bother to subpoena the bank records instead wanted personal financial information from each defendant.

4. On May 8, 2015 Mr. Barwell sent Mr. Bahgat another email demanding that he dismiss the remaining claims against the individual defendants.[10] Mr. Bahgat responded that he was not going to dismiss Luke Stratton, Nicholas Zettler, Alex Rouse or Zettler Hardware even though he admits that Peter Michailidis is the "actual tortfeasor".[11] At this current time there are no tort claims remaining in the case and even if there were tort claims, based upon Mr. Bahgat's admission, the remaining defendants should have been dismissed.

5. After the fraud claim was dismissed by this Court, on June 2, 2015, Mr. Bahgat was put on notice again demanding that the remaining claims of breach of contract, unjust enrichment and breach of warranty be dismissed. Contained in this letter to Mr. Bahgat was supporting case law for each relative claim.[12]

### III.  LEGAL ARGUMENT

  <u>Fraud Claim</u>: As Defendants' motion for summary judgment demonstrated, Plaintiff's fraudulent misrepresentation claim against Defendants was patently frivolous because it was filed months after the expiration of the statute of limitations. This Court held in its opinion "Defendants Zettler, Mr. Zettler, Rouse, Michailidis, and Stratton were neither parties to the Hawaii state court action nor the original federal court action. Plaintiff, then, had not one, but two earlier opportunities

---

[7] See February 21, 2014 letter to Joseph Bahgat attached hereto as Exhibit 2. It should also be noted that Mr. Barwell notified Mr. Bahgat that his refilling of the case he should have notified the Clerk that the 2011 case was a related matter in compliance with Local Rule 3.1. Mr. Bahgat refused to do so and he admits discovery was not "even close to complete in the prior case." See February 24, 2014 letter to Gregory Barwell attached hereto as Exhibit 3.
[8] See December 19, 2014 email to Joseph Bahgat attached hereto as Exhibit 4.
[9] See February 5, 2015 email to Joseph Bahgat attached hereto as Exhibit 5.
[10] See May 8, 2015 email to Joseph Bahgat attached hereto as Exhibit 6.
[11] See May 8, 2015 email from Joseph Bahgat attached hereto as Exhibit 7.
[12] See June 2, 2015 letter to Joseph Bahgat attached hereto as Exhibit 8.

4

to attempt to bring its claim for fraudulent misrepresentation against Defendants. Rutherlan chose to wait, however, until the most recent filing to include these five additional defendants. Due to Plaintiff's addition of new parties in the 2014 complaint, the Court finds that the fraudulent misrepresentation claim is not preserved by the Ohio Savings Statute."[13] Mr. Bahgat ignored Mr. Barwell's requests to dismiss the fraud claim because it was filed beyond the statute of limitations.

Breach of Contract, Breach of Warranty and Unjust Enrichment:

On August 26, 2016, this Court issued its Order on Defendant's Motion for Summary Judgment. Mr. Bahgat was provided with facts and case law as to why his claims for breach of contract, breach of warranty and unjust enrichment would fail on a motion for summary judgment. This Court agreed with the Defendants and issued judgment against the Plaintiff thus dismissing all of its claims, including piercing the corporate veil.

All of this work could have been avoided if Plaintiff would have listened to Defendants or at the very least researched case law to understand that its position was faulty. Plaintiff chose not to do so and in turn cost the Defendants roughly $70,000.00 in attorneys' fees that could have been avoided. Instead, Plaintiff pressed on with its frivolous claims. In hindsight it is a relief (financially that is) that Plaintiff was not more diligent, as Defendants' attorney's fees could have been twice as high. The bottom line shows that this entire litigation could have been avoided but for Plaintiff's conduct.

Attorneys' Fees:

"Generally, fee shifting is prohibited under the "American Rule," which is "deeply rooted in our history and in congressional policy." *See Alyeskaya Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 271, 95 S. Ct. 1612, 44 L. Ed. 2d 141 (1975). Congress, however, "while fully

---

[13] See page 8, Document #42, Case No. 2:14-cv-00019.

recognizing and accepting the general rule," has made "specific and explicit provisions for the allowance of attorneys' fees under selected statutes granting or protecting various federal rights." Id. at 260-61. In addition to awarding fees under one of these statutory provisions, moreover, a court may assess attorney fees against a party under the court's inherent powers "when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Chambers*, 501 U.S. at 45 (quoting *Alyeska Pipeline Serv. Co*., 421 U.S. at 258-59). This "bad faith exception" to the American Rule -- the imposition of sanctions under a court's inherent powers -- thus requires a finding of bad faith or of conduct "tantamount to bad faith." *Youn v. Track, Inc*., 324 F.3d 409, 420 (6th Cir. 2003) (quoting *First Bank of Marietta v. Hartford Underwriters Ins. Co*., 307 F.3d 501, 517 (6th Cir. 2002); *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 767, 100 S. Ct. 2455, 65 L. Ed. 2d 488 (1980))." *BDT Prods. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 752 (6th Cir.2010).

The Sixth Circuit applies a three-prong test to determine whether a district court may properly impose sanctions to the extent of attorney fees under this bad faith exception. "In order to award attorney fees under this bad faith exception, a district court must find [1] that 'the claims advanced were meritless, [2] that counsel knew or should have known this, and [3] that the motive for filing the suit was for an improper purpose such as harassment.'" *Big Yank,* 125 F.3d at 313 (quoting *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1375 (6th Cir. 1987)). The Plaintiff's claims were meritless as it presented no facts or case law to support the claim for fraud, breach of contract, unjust enrichment or breach of warranty. Plaintiff claimed it had a theory and postured since it filed its first federal lawsuit in 2011 but never put forth any evidence to support its theory. Plaintiff's counsel knew or should have known that its claims were meritless because Defendant's counsel put him on notice at least three times, and provided supporting case law that the claims were meritless. Since Plaintiff did little other than file a motion for default judgment

against an unrepresented party, one can only assume that the purpose of filing this third case was to harass or attempt to force the newly added Defendants into some type of monetary settlement.

Reasonable Hours Billed

Defendants are requesting reimbursement for its reasonable attorneys' fees on this third case. To determine reasonable hours, "the standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Woolridge v. Marlene Industries Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990). The Sixth Circuit stated that "this court has upheld an award of attorney fees and found billing records to be adequate where entries made by counsel 'were sufficient even if the description for each entry was not explicitly detailed." *McCombs v. Meijer, Inc.*, 395 F.3d 346, 360 (6th Cir. 2005).

Wesp Barwell LLC expended $67,634.00 of fees for its work in this litigation. The requested reimbursement relates to hours spent on the following: preparation and attendance at hearings; preparation and attendance at 3 depositions; preparation and attendance at a mediation and settlement conferences; obtaining and analyzing documents; handling discovery disputes; and the accumulation of these events that resulted in two motions for summary judgment.

Furthermore, the time expended in a case such as this is reasonable. As explained in *Hall v. Borough of Rosell*, 747 F.2d 838, 841-42 (3rd Cir. 1984) (emphasis added):

> The line between a reasonable and unreasonable expenditure of time in pursuit of a client's case is not always clearly evident in the heat of battle. On the other hand members of the bar are quasi-officers of the court and they are expected to be careful and scrupulously honest in their representations to the court. They should demonstrate the same level of billing judgment and sensitivity under the Attorney's Fees Award Act as they do with their own private clients. The courts frequently must rely not only upon the accuracy of the record keeping but upon the intellectual honesty of counsel in the allocation of hours worked and in the measurement of time.

Wesp Barwell LLC has documented the hours spent on each of its tasks as they relate to the case and claims, and all of the other necessary tasks undertaken in this litigation, by providing detailed invoices that include: the date of services, the attorney providing the services, a description of the services provided, the amount of time expended, and the total amount owed. (Barwell Decl. ¶4). This submission satisfies all of the Sixth Circuit's requirements for documentation to support an award for attorney fees and a finding that the time spent was reasonable.

Reasonable Hourly Rate

Wesp Barwell LLC billed the following hourly rates for the attorneys and professional staff who prepared this case: $255.00 per hour for partners; $175.00 for associates; $125.00 per hour for paralegals and law clerks; and $40.00 per hour for support staff. These rates are customary and standard for legal work normally performed by Wesp Barwell LLC.

In determining whether the billing rate is reasonable courts will look at the standard market rate in the community, which is the rate that "lawyers of comparable skill and experience can reasonably expect to command with the venue of the court of record …" *Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000).

Here, the hourly rates charged by Wesp Barwell LLC are either consistent or below the rates published in *The Economics of Law* for the Columbus region. There are three metrics in *The Economics of Law* that determine the rate for attorneys – (1) the size of the firm; (2) years in practice and (3) the location of the law office. The chart below summarizes the 2013 attorney hourly billing rates as indicated in *The Economics of Law*.

| 2013 The Economics of Law Rates[14] | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Size of firm with 3-6 attorneys | | | Years in practice 11-15 | | | Years in practice 36+ | | |
| Median | 75th | 95th | Median | 75th | 95th | Median | 75th | 95th |
| 220 | 250 | 400 | 200 | 275 | 400 | 250 | 325 | 450 |
| Office Location Downtown Columbus | | | | | Office Location Suburban Columbus | | | |
| Median | 75th | 95th | | | Median | 75th | 95th | |
| 275 | 373 | 510 | | | 200 | 250 | 325 | |

Defendants are entitled to recover certain litigation costs.

Pursuant to Fed. R. Civ. P. R. 54(d) and L.R. 54.1 and 28 U.S.C. § 1920, Defendants seek costs under Civil Rule as the prevailing party.  Fed. R. Civ. P. R. 54(d) allows costs to the prevailing party. Certain costs are allowable under.  28 U.S.C. § 1920 allows the following costs:

> (1) fees of the clerk and marshal;
> (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) fees and disbursements for printing and witnesses;
> (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) docket fees under section 1923 of this title;
> (6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses and costs of special interpretation services under section 1828 of this title.

---

[14] See 2013 The Economics of Law Rates attached hereto as Exhibit 3.

9

Requested Costs

Defendants seek reimbursement for a deposition cost incurred on August 26, 2014 invoiced in the amount of $325.60. This charge was for the court reporter's cost for depositions and deposition transcript of a witness Maile Kimura. This cost is allowable under 28 U.S.C. § 1920 (2) as it is a "fee for printed or electronically recorded transcripts necessarily obtained for use in the case."

Defendants seek reimbursement for a deposition cost incurred on October 21, 2015 invoiced in the amount of $438.00. This charge was for Armstrong & Okey, a court reporter's, cost for depositions and deposition transcript of a witness, Terry Caplan. This cost is allowable under 28 U.S.C. § 1920 (2) as it is a "fee for printed or electronically recorded transcripts necessarily obtained for use in the case."

Defendants seek reimbursement for a deposition cost incurred on January 18, 2016 invoiced in the amount of $307.50. This charge was for a court reporter's cost for depositions and deposition transcripts of witnesses. This cost is allowable under 28 U.S.C. § 1920 (2) as it is a "fee for printed or electronically recorded transcripts necessarily obtained for use in the case."

Total Request: $1071.10

Defendants respectfully request that the Court grants its motion for costs under the Civil Rule 54(d) and 28 U.S.C. § 1920. Defendants have reviewed its invoices and to the best of its ability has provided a detailed account with information regarding each cost and why they were necessary and reasonable and, thus, reimbursable under the law. A bill of costs with attached invoices is filed separately.

IV. CONCLUSION

Defendants have prevailed on both of its motions for summary judgment. The Defendants have presented substantial evidence demonstrating the reasonableness of its requests for fees and costs. Thus, Defendants respectfully requests an award of attorneys' fees in the amount of $67,634.00, reimbursement of litigation costs in the amount of $1,071.10.

Respectfully submitted,

Wesp Barwell LLC

*/s/ Gregory P. Barwell*
Gregory P. Barwell (0070545)
Quinn M. Schmiege (0085638)
100 East Broad St, Suite 2350
Columbus, Ohio 43215
Voice and Fax:  614.456.0488
Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I certify that on October 11, 2016, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of this Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's system.

*/s/ Quinn M. Schmiege*